In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-00360-CR


____________________



IGNACIO ALBERT MARBAN, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 284th District Court


Montgomery County, Texas


Trial Cause No. 06-06-06091-CR






 MEMORANDUM OPINION


 A jury found Ignacio Albert Marban guilty of the offense of engaging in organized
criminal activity, assessed his punishment at ten years of confinement in the Institutional
Division of the Texas Department of Criminal Justice, and fined him $10,000. See Tex. Pen.
Code Ann. § 71.02 (Vernon Supp. 2008). Marban challenges the sufficiency of the evidence
to support the jury's verdict, and he complains about the admission of certain evidence
concerning stolen vehicle parts. Finding no error, we affirm the trial court's judgment.

Organized Criminal Activity


 Under chapter 71 of the Texas Penal Code, a person commits the offense of engaging
in organized criminal activity "if, with the intent to establish, maintain, or participate in a
combination or in the profits of a combination or as a member of a criminal street gang, he
commits or conspires to commit one or more" of the object offenses set out in the statute. 
See Tex. Pen. Code Ann. § 71.02(a)(1). A "combination" is "three or more persons who
collaborate in carrying on criminal activities, although: (1) participants may not know each
other's identity; (2) membership in the combination may change from time to time; and (3)
participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit
distribution operations." Tex. Pen. Code Ann. § 71.01(a) (Vernon 2003). A person may
engage in organized criminal activity either by committing the object offense or by
conspiring to commit the object offense. See McIntosh v. State, 52 S.W.3d 196, 199 (Tex.
Crim. App. 2001). In this case, the organized criminal activity offense allegedly involved
the commission by Marban of the object offense of theft. 

Background


 The Montgomery County Auto Theft Task Force was investigating a series of cases
that involved stolen Acuras and Hondas. John Gambill testified that his 1992 red Acura
Integra was stolen from his apartment complex. Task Force investigators responded to a
report about abandoned vehicles located in the woods. When the officers arrived, they saw
Carlos Hernandez and Johnny Phillips carrying auto parts away from the back of the
property. The officers found a stolen blue Honda Civic, which was almost completely
stripped, and also found Gambill's Integra, which had been partially stripped. Missing from
the Integra were its exhaust manifold, its engine head, and a computer. Hernandez was
carrying the manifold and Phillips had the computer. The engine head was in a bucket near
the Integra. The officers arrested Hernandez and Phillips. 

 Phillips informed the officers about three additional locations where stolen vehicles
or stolen parts could be found. One of these locations was the Marban residence. The
officers discovered three Honda Civics, which looked like they were being repaired, and
many vehicle parts scattered around the premises. The officers determined that the vehicle
identification numbers on two of the Civics had been altered. The third had no transmission
or engine, and parts in the rear did not match the car's color. The officers also found
Gambill's golf shoes and golf towel at the Marban residence. The shoes and towel had been
in Gambill's vehicle when it was stolen.

 Marban, a high-school senior at the time of his arrest, maintained a web site where
auto parts could be purchased. He had no receipts for any of the parts at his residence and
no explanation for the altered vehicles. The officers towed the three Honda Civics to the
auto theft impound lot, and seized four truck loads of auto parts from the location. Most of
the parts were determined to have been altered or stolen. 

 Three of the men apprehended by the Task Force testified at Marban's trial. Donald
Futrell admitted to stealing cars with Phillips, James Hill, and Hernandez. Acuras and
Hondas were targeted for their motors. Hill testified the parts are interchangeable. Futrell
testified that Marban "would mention somebody wanting a part, and if we came across it that
he would know a way to get rid of it." Futrell and the others would then "go out and look"
for the car so they could "pull the parts off." He testified that Marban participated with him
and Phillips in the theft of a white Integra. Futrell explained that Marban was one of
Hernandez's parts buyers, that Marban and Hernandez knew the same people and who
wanted what, and that Hernandez and Marban "[went] through each other." Futrell indicated
that Hernandez and Marban disliked each other and were not "getting along," but they
continued to do business together.

 James Hill testified he was personally familiar with at least three car theft rings and
that the members of those groups were rather "fluid." He stated he was aware that Marban
was a buyer of stolen parts. Hill admitted that about 4 p.m. on the day of his arrest, he took
a 1992 Honda to Marban's for assistance in repairing the car, which was not running and had
no hood or front bumper. Hill testified that James Gibson stole the engine and transmission
for the Honda and that Marban was going to install them. Hill further conceded that at the
time of his arrest, he and Marban were trying to obtain parts to finish putting the car back
together.

The Conviction


 Marban was charged with, convicted of, and sentenced for engaging in organized
crime by committing the object offense of theft of the Gambill vehicle. The jury found
Marban guilty of engaging in organized criminal activity as alleged in the indictment. The
jury assessed Marban's punishment at ten years of confinement and a $10,000 fine. See Tex.
Pen. Code Ann. § 12.34(a),(b) (Vernon 2003), § 71.02(b),(c) (Vernon Supp. 2008). 

Sufficiency of the Evidence


 In issues one and two, Marban contends the evidence is legally and factually
insufficient to support his conviction. Specifically, Marban asserts "the [S]tate did not prove
that [he] collaborated with his co-defendants," nor did the State prove he had the intent to
commit theft or had knowledge of the auto theft alleged in the indictment. Marban also
argues the evidence was contrary to a finding that the combination involved a continuing
course of criminal activity; and there was no evidence he committed an overt act in
furtherance of the combination.

 In reviewing the legal sufficiency of the evidence, an appellate court reviews all of
the evidence in a light most favorable to the verdict, and must decide if any rational trier of
fact could find the essential elements of the crime beyond a reasonable doubt. See Jackson
v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Evans v. State, 202
S.W.3d 158, 161 (Tex. Crim. App. 2006). When conducting a factual sufficiency review,
a court views the evidence in a neutral light and asks whether the evidence supporting the
verdict is so weak or so against the great weight and preponderance of the evidence as to
render the verdict manifestly unjust. Grotti v. State, 273 S.W.3d 273, 283 (Tex. Crim. App.
2008). We must give the jury's verdict a great degree of deference. Watson v. State, 204
S.W.3d 404, 416-17 (Tex. Crim. App. 2006). A reviewing court may only reverse a
judgment for factual insufficiency if necessary to "prevent manifest injustice." Laster v.
State, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009). 

 In a case of organized criminal activity, direct evidence is not always available to
prove the existence of an agreement. Nethery v. State, 29 S.W.3d 178, 184 (Tex. App.--Dallas 2000, pet. ref'd). An agreement among a group working on a common criminal
project may be inferred from sufficient circumstantial evidence. Id. 

 The evidence shows that Marban solicited, purchased, and used stolen automobile
parts, which he obtained through several car-theft rings, including one comprised of
Hernandez, Phillips, Hill, and Futrell. The evidence further shows that Marban participated
directly in at least one of the car thefts with Futrell and Phillips. The evidence also shows
that Marban was participating in the combination at the time Gambill's Integra was stolen,
and that Marban, Phillips, Hill, Futrell and Hernandez still worked together at that time. The
theft ring would procure parts requested by Marban. 

 James Hill, Donald Futrell, and Johnny Phillips, three of the men apprehended in
connection with the theft of Gambill's Integra, all testified someone other than Marban
actually stole Gambill's vehicle. Hill testified that Hernandez and Phillips stole the vehicle,
while Phillips testified that he and Hill stole it. 

 The State concedes that no parts from Gambill's Integra were identified at the Marban
residence. No one testified that the Integra was stolen to supply Marban with parts, that
Marban used the parts from the Integra, that Marban paid or offered to pay for parts from the
Integra, or that parts from the Integra were delivered to Marban or his residence or stored
there. Significantly, Gambill's golf shoes and golf towel, property that was in the Integra
when it was stolen, were recovered from the Marban property. 

 The jury as factfinder could accept or reject some or all of the testimony of each
witness and draw reasonable inferences from the evidence. See Hooper v. State, 214 S.W.3d
9, 14 (Tex. Crim. App. 2007). The stolen golf shoes and towel from Gambill's car were left
at Marban's residence before Hernandez and Phillips dismantled the motor of Gambill's
Integra. A reasonable inference would be that no auto parts from Gambill's Integra were
found at Marban's property because Hernandez and Phillips had not yet taken the motor off
the Integra. They were in the process of doing that when arrested. The presence of the stolen
golf shoes and towel from the Integra at Marban's property supports the reasonable inference
that Marban was involved in the theft of the stolen car from which the property was removed. 
See Dominguez v. State, 461 S.W.2d 417, 419 (Tex. Crim. App. 1971) ("[T]he unexplained
possession of property recently stolen is a sufficient circumstance to authorize a jury to
convict for theft of the property."). There is no evidence suggesting an innocent explanation
for the stolen golf shoes and towel from Gambill's Integra found at Marban's property. See
generally Middleton v. State, 187 S.W.3d 134, 138-39 (Tex. App.--Texarkana 2006, no pet.)
(discussing logical inference from possession of recently stolen property). 

 Theft occurs when an individual unlawfully appropriates property with intent to
deprive the owner of the property. Tex. Pen. Code Ann. § 31.03(a) (Vernon Supp. 2008). 
To "appropriate" is "to acquire or otherwise exercise control over property . . . ." Tex. Pen.
Code Ann. § 31.01(4)(B) (Vernon Supp. 2008). To "acquire" means to "gain possession or
control of; to get or obtain." Black's Law Dictionary 25 (8th ed. 2004). To "otherwise
exercise control" may happen in a way other than through physical possession of the
property. See Stewart v. State, 44 S.W.3d 582, 587-89 (Tex. Crim. App. 2001). In Stewart,
the defendant "otherwise exercise[d] control" by using threats to cause the release of money. 
Id. at 586-89. The Court of Criminal Appeals held that the defendant exercised control over
the money and committed theft when "he caused the complainant to release the money," even
though the money had not yet been delivered to him. Id. at 589.

 In this case, considering the totality of the evidence, including the methods of this car
theft ring, the past activities of the group, and the presence of stolen items from the vehicle
at Marban's residence, the jury could reasonably infer that Marban requested a stolen motor
and the Gambill vehicle was stolen to supply him with the requested part. The jury could
reasonably conclude he unlawfully acquired or exercised control over the vehicle with the
intent to deprive the owner of the property. The fact that the delivery of the parts to him was
interrupted by law enforcement does not undermine the jury's verdict. "[T]he crucial
element of theft is the deprivation of property from the rightful owner, without the owner's
consent, regardless of whether the defendant at that moment has taken possession of the
property." Stewart, 44 S.W.3d at 589. The logical force of all the evidence, direct and
circumstantial, supports the jury's verdict. See Evans, 202 S.W.3d at 162. We overrule
issues one and two.

 In issue three, Marban argues the trial court abused its discretion by admitting
evidence of extraneous offenses in the guilt/innocence phase of the trial. He contends a
detective's testimony that four truckloads of parts were recovered at Marban's residence,
along with Johnny Phillips's testimony that Marban had purchased stolen parts in the past,
was extraneous offense evidence and should not have been admitted. Marban argues the
evidence was inadmissible because it is not relevant and its probative value does not
outweigh its inflammatory or prejudicial effect. He relies on Plante v. State, 692 S.W.2d
487, 491 (Tex. Crim. App. 1985), a theft-by-deception case, and Rule 403 of the Texas Rules
of Evidence. Citing Harrell v. State, 884 S.W.2d 154, 160 (Tex. Crim. App. 1994), and Rule
104(b) of the Texas Rules of Evidence, Marban also argues that the trial court should have
conducted a hearing to determine whether a jury could find beyond a reasonable doubt that
the defendant committed each extraneous offense.

 The State contends Marban failed to preserve his claim because he did not
contemporaneously object to the admission of the evidence. However, at a bench conference
outside the jury's presence, the trial court considered Marban's objection to extraneous
offense evidence relating to the stolen cars and ruled in the State's favor. See Tex. R. Evid.
103(a)(1) ("When the court hears objections to offered evidence out of the presence of the
jury and rules that such evidence be admitted, such objections shall be deemed to apply to
such evidence when it is admitted before the jury without the necessity of repeating those
objections."); see also Lopez v. State, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008). The
bench conference provided the trial court the opportunity to consider the necessary factors
and rule on the objection.

 On this record, the jury could find beyond a reasonable doubt that Marban was in
possession of the stolen parts and purchased stolen parts in pursuit of the activity in which
he participated. The testimony that stolen parts were removed from Marban's residence after
his arrest, along with Phillips's testimony that Marban had purchased stolen parts, is
probative evidence of the elements of the offense of engaging in organized criminal activity. 
One essential element of that offense is the intent to establish, maintain, or participate in a
combination or in the profits of a combination; a combination is three or more persons who
collaborate in carrying on criminal activities. See Tex. Pen. Code Ann. § 71.02(a)(1)
(requirement of combination); § 71.01(a) (definition of combination); Nguyen v. State, 1
S.W.3d 694, 696-97 (Tex. Crim. App. 1999) (State must prove that appellant intended to
establish, maintain, or participate in a group of three or more, in which the members intend
to work together in a continuing course of criminal activities; the acts which prove the
elements of the offense do not have to be criminal offenses.); McDonald v. State, 692 S.W.2d
169, 173-74 (Tex. App.--Houston [1st Dist.] 1985, pet. ref'd) (Where the indictment charges
appellant collaborated in more than one act, those acts are by definition not "extraneous" to
the offense charged.). Furthermore, the testimony was evidence relevant to the element of
combination and the collaboration in carrying on criminal activities; and the probative value
of this evidence was not "substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence." See Tex. R. Evid. 403. The evidence tended
to prove Marban had the intent to establish, maintain, or participate in a combination or in
the profits of a combination, an essential element of the offense of engaging in organized
criminal activities. See Tex. R. Evid. 404(b). We overrule issue three. 

 The judgment is affirmed. 


 AFFIRMED.

 ____________________________

 DAVID GAULTNEY

 Justice


Submitted on March 30, 2009

Opinion Delivered August 26, 2009

Do Not Publish


Before Gaultney, Kreger, and Horton, JJ.

DISSENTING OPINION


 In this case, the State presented ample proof that Marban was conducting an illegal
business in car parts, but the State did not choose to indict and convict him of engaging in
organized crime by committing the object offense of buying and selling the stolen car parts
that were found where he conducted his operations. Instead, the State chose to indict Marban
for engaging in organized crime by committing the object offense of stealing Gambill's red
Acura Integra. Accordingly, the State bore the burden of proving that Marban stole
Gambill's red Acura Integra. Neither Gambill's car, nor any of its parts, were found on the
property where Marban conducted his repair operations. According to the majority, the
unexplained presence of golf shoes and a golf towel that had previously been in Gambill's
car but were found on the premises where Marban conducted his repair operations, together
with other evidence that Marban generally was purchasing stolen car parts, is sufficient to
allow the jury to infer that Marban stole Gambill's car. 

 While the shoes and towel were found on the premises where Marban conducted his
repair operations, the State did not prove that he was in possession of the towel and shoes,
and he was not shown to have owned the premises. The towel and shoes were apparently
found somewhere in the yard surrounding the home of Marban's mother. As far as I know,
these objects are not typically associated with the repair of cars, and there was no proof
otherwise. 

 The majority holds that an inference arises from the presence of the golf shoes and
towel sufficient to prove the State's allegation that Marban stole Gambill's red Integra. I
disagree that the presence of these items on premises which were not in Marban's ownership
or exclusive possession is sufficient to support a reasonable inference that Marban stole 
Gambill's car, the object from which they had been removed. Because the majority holds
otherwise, I respectfully dissent. 


 _________________________________

 HOLLIS HORTON

 Justice


Dissent Delivered

August 26, 2009